UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LISA P.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | CASE NO. 3:23-CV-5357-DWC<br><br>ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

　　　　Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of her application for Disability Insurance Benefits (DIB). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to proceed before the undersigned. After considering the record, the Court affirms the ALJ's decision in part, reverses the ALJ's decision in part, and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

# BACKGROUND

Plaintiff filed an application for DIB on January 20, 2015. Administrative Record (AR) 96, 383–86. Her amended alleged onset date is November 14, 2013. AR 96. Her date last insured is December 31, 2019. *Id.* After her application was denied initially and upon reconsideration (AR 189–221) she filed a written request for a hearing (AR 255–56). The Administrative Law Judge (ALJ) held hearings in which Plaintiff was represented in March 2017 (AR 122–53) and September 2017 (AR 154–88). The ALJ issued a decision finding Plaintiff not disabled in December 2017. AR 93–118. Plaintiff appealed to this Court, and magistrate Judge Theresa Fricke issued a decision in March 2020 reversing the ALJ's decision. AR 1685–1707.

On remand from the Appeals Council, the ALJ held a new hearing on January 8, 2021. AR 1602–46. On March 21, 2021, the ALJ issued a decision finding Plaintiff not disabled from November 13, 2013, through the date last insured, December 31, 2019. AR 1567–1601. The Appeals Council declined Plaintiff's timely request for review, making the ALJ's decision the final agency action on the matter. AR 1559–66. On May 8, 2023, Plaintiff filed a complaint appealing the ALJ decision. Dkt. 4.

# STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if and only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

# DISCUSSION

Plaintiff raises the following issues on appeal: (1) whether the residual functional capacity (RFC) assessed by the ALJ adequately included the opinions of two state agency

psychological consultants, Dan Donahue, Ph.D. and Eugene Kester, M.D.; (2) whether the ALJ erred in assessing the medical opinions of Howard Taylor, M.D., and Kathleen Polo, M.D.; and (3) whether the ALJ's step four and step five findings were supported by substantial evidence. *See generally* Dkt. 10. Plaintiff's requested relief is a remand for additional proceedings. *See* Dkt. 10 at 2, 15.

**A. State Agency Consultant Opinions**

The ALJ gave the opinions (AR 194–204, 214–204) of two state agency consultants, Drs. Donahue and Kester, "some weight," stating:

> Particular weight is given to their opinions that the claimant would perform best in a work setting with limited social interaction and limited changes in routine. They additionally opined that the claimant may have occasional interruptions in concentration, persistence, or pace due to chronic pain or psychological symptoms, but would be able to persist throughout an eight-hour workday. While the mental health treatment records indicate that these may occur, the undersigned finds that the evidence of improvement and reasonably good symptom control suggests that the claimant would not be off task more six minutes per hour in a workday, which vocational expert Sonia Stratton testified would be acceptable to most employers (Hearing Testimony).

AR 1585.

An ALJ must generally either incorporate limitations opined by a medical opinion into the RFC or give reasons for declining to do so. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); SSR 96-8p. Plaintiff argues the ALJ erred by not explaining why two limitations reflected in the state agency consultants' opinions were not included in the RFC. Dkt. 10 at 4–8.

First, Plaintiff argues the ALJ failed to incorporate the state agency consultants' opinions on Plaintiff's social limitations. Dkt. 10 at 6–7. Dr. Donahue opined Plaintiff "should have no contact with the general public," and was "capable of appropriate interaction with supervisors and [a] limited number of co-workers." AR 201. Dr. Kester, on the other hand, opined Plaintiff "would do best in an environment that allowed occasional contact [with] the gen[eral] public and frequent contact [with] co-workers and supervisors." AR 218. Consistent with the opinion of Dr.

Kester, the RFC limited Plaintiff to no more than occasional interaction with the general public and frequent interaction with co-workers and supervisors. AR 1576.

"Even when an agency 'explains its decision with less than ideal clarity,' [the Court] must uphold it 'if the agency's path may reasonably be discerned.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). The Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. And an ALJ can satisfy his articulation requirement for medical opinions by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Although the ALJ stated he gave "particular weight" to the consultants' opinions that Plaintiff could "perform best in a work setting with limited social interaction" (AR 1585), the ALJ explained elsewhere in the decision why he did not accept the precise limitations opined by Dr. Donahue:

> While the claimant experiences some level of continued anxiety and depression symptoms, the undersigned finds that these are adequately addressed by restricting the claimant to no more than occasional interaction with the general public; no more than frequent interaction with co-workers or supervisors; and to work that does not require more than occasional changes in the work setting.

AR 1582. In support, the ALJ noted Plaintiff's lack of subsequent mental health treatment, her periodic statements to providers that her anxiety and depression levels were improving, her use of medications and marijuana, and her reports of effective counseling. AR 1581–82. Plaintiff does not challenge the ALJ's analysis of the social limitations the ALJ included in Plaintiff's RFC. *See generally* Dkt. 10.

In light of these findings, the ALJ's path can be reasonably discerned. The opinions of Drs. Donahue and Kester differed with respect to the particular social limitations appropriate for Plaintiff. *See* AR 201, 218. The ALJ made findings and then interpreted the evidence in a manner that supported the limitations opined by Dr. Kester. AR 1581–82. The ALJ also explained why the limitations opined by Dr. Donohue were not adopted. *See id.* This is sufficient for the Court to follow the ALJ's path and conclude the ALJ's assessment on social limitations is supported by substantial evidence.

Second, Plaintiff argues the ALJ failed to incorporate the state agency consultants' opinions that she had moderate limitations in her ability to maintain attention and concentration. Dkt. 10 at 6. "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Here, both state agency consultants opined Plaintiff was "capable of sustained concentration, pace, and persistence for" a normal workday or workweek. *See* AR 201, 218. Consequently, the ALJ's omission of any additional limitations with respect to those abilities was consistent with the opinions of both state agency consultants and therefore not erroneous.

**B. Medical Opinions of Drs. Taylor and Polo**

Plaintiff challenges the ALJ's assessment of a February 2015 statement written by non-examining and non-treating physician Dr. Taylor, which quoted a statement made to him by examining physician Dr. Polo. Dkt. 10 at 11–15. Plaintiff argues the ALJ erred because "Dr. Taylor and Dr. Polo opined Plaintiff would be limited to a sedentary range of work," and the ALJ failed to credit these opinions. Dkt. 10 at 15.

1. <u>Opinions of Drs. Taylor and Polo</u>

Dr. Taylor based his February 2015 statement on his review of available medical records, including the medical evidence related to Plaintiff's orthopedic conditions after her November 2013 car accident and evidence from Dr. Polo's examinations of Plaintiff related to that accident. AR 1442–46. Dr. Taylor also referenced a conversation he had with Dr. Polo:

> I asked Dr. Polo if there was any physical medical basis as of 2/10/2014, approximately 3 months after her accident, that [Plaintiff] could not sit up to an hour at a time, get up and move about for 5 minutes and do this repeatedly for 8 hours while lifting no more than 10 pounds. . . . Dr. Polo then told me she examined [Plaintiff] a couple of times and there was not a physical reason that would impair her ability to perform the activities I mentioned.

AR 1444. As part of his statement, Dr. Taylor answered several specific questions including whether "the medical information support[s] functional limitations . . . beyond [February 10, 2014]." AR 1444. Dr. Taylor stated:

> The medical records do not support a physical basis to restrict or limit [Plaintiff] from performing her usual and customary occupational activities. There is no physical basis that she had not recovered sufficiently by 2/10/2014 to resume sedentary activities.

AR 1445. Another question asked Dr. Taylor to provide a prognosis for Plaintiff's impairments. *Id.* Dr. Taylor responded: "The prognosis is good and there is no physical medical evidence that she had not recovered by 2/10/2014. The dates of these impairments were 10/14/2013 through 1/10/2014." AR 1445.

2. <u>The ALJ's Decision</u>

After stating he gave the statements of Drs. Polo and Taylor "some weight," the ALJ explained that the amount of weight he gave the statements depended how one interpreted them:

> The undersigned finds some of these assessed limitations to be generally consistent with the evidence discussed above and to support the determination that the claimant was able to perform at least sedentary exertional activity on a regular and continuing basis. However, to the extent that these opinions assert that the claimant is unable of performing work exertional levels greater than sedentary, they are given no weight.

AR 1584. The ALJ went on to explain that if the statements did, in fact, assert the claimant was unable to perform greater-than-sedentary work, then he gave the statements no weight based on Plaintiffs activities of daily living, "mostly mild degeneration," "frequently noted stable gait," "lack of acute distress in most exams," and "overall conservative level of care" were consistent with a light exertional level. *Id.* (citations omitted).

Plaintiff filed her applications prior to March 27, 2017, and therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Finally, a non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Id.* at 831 (citations omitted).

Plaintiff argues the ALJ's reliance on findings of a stable gait were irrelevant to Plaintiff's spine impairment, which Drs. Taylor and Polo discussed in their statements. Dkt. 10 at 13–14. Plaintiff also argues her activities of daily living were consistent with the opinions because she "was not performing these activities on a regular and continuing basis." *Id.* at 14–15.

However, the ALJ gave other reasons for rejecting the limitations purportedly opined by Drs. Taylor and Polo which Plaintiff does not challenge in her opening brief. The ALJ found the opinions were inconsistent with other medical evidence not discussed by Plaintiff. An

inconsistency with medical evidence is a sufficient reason to reject the opinion of a medical source. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

The ALJ's finding that the opinions of Drs. Taylor and Polo were inconsistent with the medical evidence was supported by substantial evidence. The ALJ noted that the opinions were inconsistent with findings of "mostly mild degeneration." AR 1584 (citing AR 811, 914–16, 1278). This medical evidence was specific to Plaintiff's cervical spine impairment and the ALJ reasonably found it undermined any allegation that Plaintiff was unable to perform greater-than-sedentary work. *See* AR 811, 914–16, 1278. The ALJ noted Plaintiff's conservative treatment regimen in response to her cervical spine impairment was inconsistent with an inability to perform greater-than-sedentary work. AR 1584. As "prescrib[ing] only 'conservative treatment' . . . suggest[s] a lower level of both pain and functional limitation," *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995), the ALJ supported his finding with an additional inconsistency with the medical evidence.

Thus, the ALJ properly gave no weight to Drs. Taylor and Polo's statements to the extent they opined Plaintiff was unable to perform work beyond the sedentary level.

3. Harmless Error

Even if the ALJ erred in evaluating the opinions of Drs. Taylor and Polo, any error was harmless. The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. Harmless error analysis applies to the evaluation of medical opinions. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Generally, an error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1111.

Harmless error must be analyzed "in light of the circumstances of the case." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). This requires "an estimation of the likelihood that the result would have been different." *Id.* The "same kind of harmless-error rule that courts

ordinarily apply in civil cases" applies in social security cases. *Molina*, 674 F.3d at 1119 & n.10 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009)). In that context, the erroneous exclusion of evidence is harmless unless it "more probably than not tainted the verdict." *Id.* at 1119 (quoting *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1009 (9th Cir. 2007), *aff'd*, 553 U.S. 591 (2008)). Although the Court "may not uphold an agency's decision on a ground not actually relied on by the agency," *id.* at 1120 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)), a Court may nevertheless assess, in the harmless error analysis, whether a medical opinion provides "minimal additional insight" or does not contradict the ALJ's determination, *see Marsh*, 792 F.3d at 1172.

"The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *see also McLeod*, 640 F.3d at 887 ("We conclude that *Sanders* applies to Social Security cases . . . ."). "Often the circumstances of the case will make clear . . . that the ruling, if erroneous, was harmful and nothing further need be said. But, if not, then the party seeking reversal normally must explain why the erroneous ruling caused harm." *Shinseki*, 556 U.S. at 410. The Ninth Circuit has "held that the claimant . . . does have to show at least a 'substantial likelihood of prejudice' from an error." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

Here, as discussed, the ALJ gave no weight to the opinions of Drs. Taylor and Polo only "to the extent" that they "assert that the claimant is unable of performing work exertional levels greater than sedentary." AR 1584. And Plaintiff challenges only the ALJ's reasons for giving the opinions "no weight" if they did, in fact, make such an assertion. *See* Dkt. 10 at 13–15. But if the opinions made no such assertion, then the errors which Plaintiff asserts would be harmless because they would not affect the ultimate determination that Plaintiff was not disabled.

1    Plaintiff has failed to explain why the statements do opine she is more limited than the
2    RFC reflects. *See generally* Dkt. 10. Throughout his statement, Dr. Taylor repeatedly pointed to
3    normal findings from examinations, and said nothing which would suggest he thought Plaintiff's
4    impairments would limit her in any way. AR 1442–46. Indeed, Dr. Taylor said that Plaintiff's
5    impairments were no longer limiting as of January, 2014. AR 1445. Dr. Polo was only asked if
6    there was "any reason" why Plaintiff "could not" perform certain activities. AR 1444. Nothing
7    from Dr. Taylor's statement leads the Court to find it plausible that Dr. Polo's statement meant
8    Plaintiff was limited to doing only those activities Dr. Polo said Plaintiff could do.

9    Thus, Plaintiff has failed to meet her burden of "showing at least a substantial likelihood
10    of prejudice" from the error she asserts. *See Ludwig*, 681 F.3d at 1054. The Court therefore finds
11    the ALJ did not commit harmful error in assessing the opinions of Drs. Taylor and Polo.

## C. Steps Four and Five

13    The Court has found that the ALJ did not err when assessing the RFC. Once an ALJ has
14    assessed a claimant's RFC, he then proceeds to steps four and five of the sequential evaluation
15    process. *See* 20 C.F.R. § 404.1520(a)(4). At step four, the ALJ assesses whether a claimant's
16    RFC precludes past relevant work. *Id.* If the claimant can perform past relevant work, she is
17    found not disabled. *See id.*; *see also* 20 C.F.R. § 404.1560(b). Otherwise, the ALJ proceeds to
18    step five of the sequential evaluation process, which asks whether the claimant can make an
19    adjustment to work which exists in significant numbers in the national economy. *See* 20 C.F.R.
20    §§ 404.1520(a)(4)(v), 404.1560(c). If the claimant can do so, she is found not disabled. *Id.*

21    The ALJ found Plaintiff capable of performing her past work as a fitting room attendant
22    and therefore found her not disabled at step four. AR 1588. However, the ALJ made an
23    alternative finding at step five. AR 1588–89. At step five, the ALJ found Plaintiff could perform
24    six positions which existed in significant numbers in the nation economy and was therefore not

disabled. AR 1588-89. However, since the Plaintiff turned 55 during the disability period, the ALJ limited this alternative finding to the period preceding Plaintiff's 55th birthday:

> Based on [the VE's] opinion regarding changes precluding work above SVP 2, if the claimant could not perform past relevant work then she would meet disabling grid guidelines as of [her 55th birthday] (the date she attained advanced age). However, since that it not the case, and she can perform past relevant work, that decision is not reached here.
>
> . . . .
>
> Based on the testimony of the vocational experts at the hearings, the undersigned concludes that the claimant was not disabled at step four, as discussed above. Also, alternative [to] the step four finding above, until the claimant's attainment of age 55, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. An alternative finding of "not disabled" is therefore appropriate under the framework of the above-cited rule until that date.

AR 1589–90. This alternative finding suggests that if the ALJ had found Plaintiff not able to perform past relevant work at step four, then the ALJ would have found Plaintiff not disabled until age 55, but disabled at age 55.

Plaintiff raises several errors with respect to the ALJ's determinations at steps four and five of the sequential evaluation process. *See* Dkt. 10 at 7–11. The Court will first address the errors Plaintiff raised regarding steps four and five of the sequential evaluation process and then address the ALJ's alternative finding.

1. Step Four

At step four, the ALJ found Plaintiff was capable of her past work as a fitting room attendant as it was generally performed. AR 1587–88. This assessment was based on the vocational expert (VE)'s testimony that a hypothetical claimant with Plaintiff's RFC could perform that work as generally performed. *See id.*

The VE initially testified the RFC was consistent with the fitting room attendant position, but later changed his mind. AR 1630–31, 1636. After the VE confirmed someone with Plaintiff's RFC could perform the position (AR 1630–31), Plaintiff's counsel asked him about whether a limitation to overhead reaching would eliminate the position (AR 1635–36). The VE replied that he had "overlooked that" limitation from the initial question. AR 1636. At the very least, he testified, it would "reduce the number" of such positions available, and it may eliminate all such positions. AR 1636. The VE then confirmed that "overhead reaching that's limited to occasional would eliminate" the position of fitting room attendant. *Id.*

A claimant can be found "not disabled" in step four if she "retains the RFC to perform" the demands of an occupation "as generally required by employers throughout the national economy" or as she herself performed it. SSR 82–61; *see also* 20 C.F.R. § 404.1560(b). To find a claimant can perform past relevant work at step four, an ALJ must assess her RFC, make specific findings about the demands of past relevant work, and then compare the RFC to those demands. *See Pinto v. Massanari*, 249 F.3d 840, 844–45 (9th Cir. 2001) (citing SSR 82–62). This determination does not require the use of a VE. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996).

In this case, however, the ALJ's determination that Plaintiff could perform her past relevant work was entirely based on the VE's testimony. *See* AR 1587–88. The ALJ said:

> It should be noted that the claimant testified that with regard to her fitting room attendant work . . . she had had to constantly lift overhead, fold, and reach. However, she elsewhere inconsistently reported that reaching was only performed for two-and-a-half hours out of five . . . . Regardless of how she performed it, however, she can perform it as the job is generally performed, as [the VE] indicated in his testimony.

AR 1588. The ALJ made no independent findings about the extent to which overhead reaching was required in the position as it was generally performed. *See id.* The ALJ specifically declined

to find Plaintiff could perform the position as she had performed it. *Id.* Because the ALJ relied on the VE's testimony in finding Plaintiff could perform past relevant work as generally performed, and the VE testified otherwise, the ALJ's finding that Plaintiff could perform past relevant work was not supported by substantial evidence.

Accordingly, the ALJ erred at step four.

2. Step Five

At step five, the ALJ found Plaintiff could perform six positions which existed in significant numbers in the national economy. AR 1588–89.

The ALJ found, based on the testimony of the VE in the 2017 hearing, that Plaintiff could perform the positions of production assembler, office helper, and garment folder. AR 1589. But the VE in the 2017 hearing was responding to a different hypothetical question—the RFC given to that VE did not limit the hypothetical claimant to work that "did not require sitting more than 60 minutes at a time and four hours total in a workday," nor did the RFC given impose any limitations with respect to noise level. *Compare* AR 1576 (2021 RFC) *with* AR 164 (2017 hearing).

A [VE's] "opinion about a claimant's [RFC] has no evidentiary value" if it does not "set out all the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Here, the ALJ found Plaintiff's RFC was limited in ways which were not considered in the hypothetical posed to the VE in the 2017 hearing. Thus, the ALJ's finding that Plaintiff could perform the positions of production assembler, office helper, and garment folder was not supported by substantial evidence.

The ALJ also found—based on the testimony of the VE in the 2021 hearing—that Plaintiff could perform the positions of small products assembler II; sub-assembler; and cleaner, housekeeping. AR 1589. At the 2021 hearing, the VE initially testified that someone with

Plaintiff's RFC could perform all three jobs. AR 1630–31. However, the ALJ then repeated something the VE had initially misunderstood—that the RFC limited Plaintiff to "four hours total" of sitting "in a workday." AR 1638. The VE then clarified "that would rule out the job of a cleaner housekeeper." AR 1639. The ALJ's determination that Plaintiff could perform that position was therefore not supported by substantial evidence.

However, the ALJ properly found Plaintiff capable of performing the positions of small products assembler II and sub-assembler. Plaintiff only argues the ALJ erred in this respect by failing to include the state agency consultants' opined moderate limitations in concentration, persistence, and pace. *See* Dkt. 10 at 9–10. The Court has already rejected this argument.

The ALJ found, based on the VE's testimony, that there were 19,000 small products assembler II positions available in the national economy and 17,200 sub-assembler positions available in the national economy. AR 1589. Plaintiff does not challenge this data. *See generally* Dkt. 10. The finding that Plaintiff can perform these two positions is enough for this Court to affirm the ALJ's finding that there were significant numbers of positions available in the national economy which Plaintiff could perform. *See Gutierrez*, 740 F.3d 519, 528–29 (9th Cir. 2014) (holding that 25,000 jobs is a significant number available in the national economy). Any error with respect to the other positions is therefore harmless, as it is inconsequential to the ultimate determination that Plaintiff could perform work existing in significant numbers in the national economy.

Accordingly, the ALJ's did not commit harmful error in making his finding at step five.

3. Remand

The Court has found the ALJ erred with respect to his step four finding. However, the Court has found the ALJ committed no reversible error with respect to his step five finding.

Ordinarily, a finding at step five that a claimant can perform work existing in significant numbers in the national economy is sufficient by itself to support a determination that the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4); *Tomasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five.").

But, here, based on the ALJ's alternative finding, a step four finding of Plaintiff not being able to perform past relevant work may result in a finding of Plaintiff not being disabled until age 55, but disabled at age 55. Thus, the ALJ's decision must be remanded for the Commissioner to review the step four issue and reassess the overall disability determination.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is **AFFIRMED** with respect to all issues except with respect to the step four issue identified in this decision. The case is therefore **REMANDED** for the agency to reassess the step four finding and the overall disability determination as set forth in this opinion.

Dated this 14th day of February, 2024.

David W. Christel
Chief United States Magistrate Judge